UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LUIS F.,[1]

                             Plaintiff,

         v.

COMMISSIONER OF SOCIAL SECURITY,

                             Defendant.
_____

DECISION & ORDER

20-CV-7122MWP

**PRELIMINARY STATEMENT**

Plaintiff Luis F. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 14).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 11). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

# DISCUSSION

## I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

3

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.     **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 18, 2016, the application date. (Tr. 18).[2] At step two, the ALJ concluded that plaintiff had the following severe impairments: right knee degenerative joint disorder status post-anterior cruciate ligament repair, asthma, bipolar disorder, post-traumatic stress disorder, schizoaffective disorder, and major depressive disorder. (*Id.*). The ALJ also found that plaintiff had several non-severe impairments, including a right wrist condition, headaches and migraines, and a history of alcohol abuse. (*Id.*). In addition, the ALJ found that plaintiff's complaint of attention deficit-hyperactivity disorder was not medically determinable. (*Id.*). With respect to plaintiff's mental limitations, the ALJ found that he suffered from moderate limitations in understanding, remembering, or applying information, in interacting with others, in concentrating, persisting, or maintaining pace, and in adapting or managing oneself. (Tr. 20-21). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 19-21).

---

[2] The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

The ALJ concluded that plaintiff retained the RFC to perform light work but with certain limitations. (Tr. 21-22). Specifically, the ALJ found that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, as well as sit, stand, or walk for 6 hours in an 8-hour day. (Tr. 21). The ALJ further concluded that plaintiff could not climb ladders, ropes, or scaffolding but that plaintiff could occasionally kneel, stoop, balance, crouch, crawl, and climb stairs and ramps. (*Id.*). As to environmental limitations, the ALJ found that plaintiff must avoid concentrated exposure to humidity, wetness, unprotected heights, dangerous machinery, fumes, odors, dust, gases, and poor ventilation. (*Id.*). Additionally, the ALJ determined that plaintiff could understand, remember, and carry out simple instructions; perform simple, routine, and repetitive tasks over an 8-hour workday within a normal break schedule; make simple work-related decisions; occasionally interact with supervisors and coworkers insofar as he could work in the presence of coworkers and engage in appropriate occasional social interactions but could not work in the context of a work team where work-related interactions with coworkers and supervisors were constant and/or physically close; and, tolerate simple routine changes in a work setting. (Tr. 21-22). The ALJ also found plaintiff limited to working with things and objects, rather than people. (Tr. 22).

At steps four and five, the ALJ determined that plaintiff was unable to perform any past relevant work, but based on plaintiff's age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that plaintiff could perform, such as inspector, sorter, and assembler. (Tr. 30-31). Accordingly, the ALJ found that plaintiff was not disabled. (Tr. 31).

**III.     Plaintiff's Contentions**

Plaintiff contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (*See* Docket ## 9-1, 12). Plaintiff argues that the ALJ's highly-specific RFC determination is flawed because the ALJ must have relied on his own lay opinion after discrediting partially or entirely every medical opinion of record. (Docket # 9-1 at 15-20). Relatedly, plaintiff maintains that the ALJ's failure to tether his RFC finding to medical opinions and evidence frustrates judicial review. (*Id.* at 17). Further, plaintiff claims that the ALJ erred by crediting the findings of the consultative examiner, Christine Ransom, Ph.D., over the findings of plaintiff's treating providers. (*Id.* at 20).

**IV.     Analysis**

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

"[T]o enable [a reviewing court] to decide whether the determination is supported by substantial evidence," *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984), an ALJ must sufficiently "explain the link between his RFC assessment and the record evidence," *Paul v. Colvin*, 2016 WL 6275231, *2 (W.D.N.Y. 2016). Although an ALJ need not resolve every evidentiary conflict in the record, he or she must explain discrepancies between the RFC finding and medical source opinions. *See Hardy v. Comm'r of Soc. Sec.*, 435 F. Supp. 3d 607, 615-16 (S.D.N.Y. 2020). "Remand may be appropriate . . . where . . . inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

Here, plaintiff argues that the ALJ must have improperly relied on his own lay opinion when determining plaintiff's RFC because he gave diminished weight to all medical opinions of record. (*See* Docket # 9-1 at 16-18; *see also* Docket # 12 at 1-2 ("[w]here an ALJ gives only partial or limited weight to the only opinions of record, it cannot be said that the ALJ's opined limitations are properly supported by medical evidence") (internal quotations omitted)). Plaintiff oversimplifies the caselaw. Irrespective of the terminology used by the ALJ, whether it be "great weight," "little weight," "some weight," or "no weight," the relevant inquiry is whether the ALJ in fact incorporates or accounts for the limitations assessed by the medical professional in the RFC, as opposed to basing the RFC upon his or her own lay interpretation of the medical evidence. *Compare Freeman v. Comm'r of Soc. Sec.*, 2019 WL 2016585, *4 (W.D.N.Y. 2019) (RFC not supported by substantial evidence where ALJ gave "little weight" to the only medical opinion of record and failed to account for resting and lifting limitations assessed in the opinion); *Nanartowich v. Comm'r of Soc. Sec.*, 2018 WL 2227862, *9 (W.D.N.Y. 2018) (ALJ's discounting of only medical opinions of record created evidentiary gap in the record; "the ALJ explicitly accorded 'little weight' to the opinions [of the physicians], and

nothing suggests that the ALJ accounted for the limitations identified by these physicians in formulating the RFC"); *Wilson v. Colvin*, 2015 WL 1003933, *21 (W.D.N.Y. 2015) ("[a]fter discounting the opinions, the ALJ determined that [plaintiff] retained the physical RFC to perform the full range of light work[;] . . . it is unclear how the ALJ arrived at this RFC or which impairments he considered in formulating his assessment"); *Gross v. Astrue*, 2014 WL 1806779, *18 (W.D.N.Y. 2014) (RFC not supported by substantial evidence where "[a]fter discounting [the physician's] opinion," the ALJ formulated the RFC "through her own interpretation of various MRIs and x-ray reports contained in the treatment records") *with Burch v. Comm'r of Soc. Sec.*, 2019 WL 922912, *6 (W.D.N.Y. 2019) ("[a]lthough the ALJ accorded limited weight to both opinions, her RFC assessment nonetheless accounts for the majority of the limitations assessed by both doctors"); *Harrington v. Colvin*, 2015 WL 790756, *17 (W.D.N.Y. 2015) (same); *Crawford v. Astrue*, 2014 WL 4829544, *21 (W.D.N.Y. 2014) ("the ALJ's RFC assessment adopted the limitations assessed by [the physician] that were supported by the evidence[,] and . . . his decision to afford [the physician] limited weight did not create a gap in the record").

In assessing whether the ALJ's RFC determination in this case accounted for the limitations assessed by the medical professionals, I conclude that it was flawed, albeit on grounds different from those alleged by plaintiff. Specifically, I find that the ALJ's analysis of Dr. Ransom's opinion appears inconsistent with his ultimate RFC findings. Without further explanation for the apparent discrepancy, remand is required.

Dr. Ransom opined that plaintiff suffers from mild difficulties following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintaining a simple regular schedule,

learning simple new tasks, performing complex tasks, relating adequately with others, and appropriately dealing with stress. (Tr. 816). The ALJ found Dr. Ransom's opinion "mostly consistent with the record" but concluded that plaintiff's "persisting symptoms with treatment suggest *at least moderate* limitations." (Tr. 28 (emphasis added)). In other words, the ALJ gave Dr. Ransom's opinion partial weight because she underestimated plaintiff's limitations, including in performing simple work, by characterizing plaintiff's difficulties as only mild. Without providing an explanation to reconcile the apparent discrepancy, however, the ALJ determined that plaintiff could perform simple work – a determination that seems inconsistent with the ALJ's analysis of Dr. Ransom's findings as underestimating plaintiff's "at least moderate" limitations.[3]  *See also Andino v. Saul*, 2019 WL 4621878, *4-5 (W.D.N.Y. 2019) ("without further explanation from the ALJ, it is difficult to reconcile plaintiff's ability to perform simple, repetitive and routine tasks with the consultative examiner's opinion that plaintiff had a moderate limitation for performing simple work independently"); *Alianell v. Colvin*, 2016 WL 981864, *14 (W.D.N.Y. 2016) ("Ransom's opinion that [plaintiff] suffers from moderate limitations in understanding simple directions and instructions and performing simple tasks independently does appear inconsistent with the ALJ's conclusion that she is unlimited in her ability to perform simple, unskilled work[;] [o]n remand, the ALJ should clarify his opinion to address Ransom's limitations and articulate whether they are consistent with his RFC findings; if not, he should

---

[3] Because the ALJ found that plaintiff suffered from moderate limitations in performing simple work, this case differs from those in which courts have affirmed that a claimant could perform unskilled work despite other moderate work function limitations. *See, e.g., Bradley W. v. Comm'r of Soc. Sec.*, 2020 WL 5848833, *12 (N.D.N.Y. 2020) ("a 'moderate' restriction [in plaintiff's *ability to maintain a schedule*] is still consistent with the ability to perform substantial gainful activity"); *Uplinger v. Berryhill*, 2019 WL 4673437, *7 (W.D.N.Y. 2019) ("the ALJ appropriately incorporated *marked limitations in dealing with stress and moderate limitations in maintaining a schedule* into plaintiff's RFC by limiting plaintiff to work in a low stress work environment reflected by simple instructions and tasks") (emphasis added); *Lowry v. Comm'r of Soc. Sec.*, 2017 WL 1290685, *4 (N.D.N.Y. 2017) ("[t]he Second Circuit has held that a *moderate limitation in the area of concentration, persistence, or pace* would not necessarily preclude the ability to perform unskilled work") (emphasis added), *report and recommendation adopted by*, 2017 WL 1291760 (N.D.N.Y. 2017).

explain his basis for rejecting them"); *Reider v. Colvin*, 2016 WL 5334436, *6 (W.D.N.Y. 2016) ("[the consultative examiner's] opinion that [plaintiff] suffered from mild to moderate difficulties understanding simple directions and instructions and performing simple tasks independently seems at odds with the ALJ's conclusion that [plaintiff] could perform simple work").[4]

        Having concluded that remand is required, I need not address any other specific challenges to or perceived deficiencies in the ALJ's decision. That said, for the benefit of proceedings on remand, I note several instances in which the ALJ mischaracterized the record. First, the ALJ stated that plaintiff "only appeared for treatment less than a handful of times during 2019, and reported doing well and that his medication was helpful in his most recent visits." (Tr. 27). To the contrary, the record shows that plaintiff appeared for treatment eight times within the first eight months of 2019. (Tr. 1146 (May 15, 2019); Tr. 1212 (May 29, 2019); Tr. 1208 (June 3, 2019); Tr. 1202 (June 10, 2019); Tr. 1193 (June 24, 2019); Tr. 1187 (July 11, 2019); Tr. 1181 (July 31, 2019); Tr. 1168 (August 12, 2019)). The ALJ, who provided a list and

---

[4] Elsewhere in the decision, the ALJ concluded that the "record as a whole warrants mental limitations consistent with simple, routine, and repetitive tasks with additional interactive limitations," noting that plaintiff was consistently appropriate, cooperative, and engaged during his mental health treatment visits, frequently failed to show for scheduled visits and returned only when he needed medication refills, and reported doing well and that his medication was helpful. (Tr. 27). Although this analysis provides some basis for the ALJ's conclusion that plaintiff is capable of simple work, it does not eliminate the apparent conflict between the ALJ's RFC finding and his analysis of Dr. Ransom's opinion. The ALJ needed to reconcile these portions of his decision, and this Court may not do so for him. *Andino v. Saul*, 2019 WL 4621878 at *5 ("[t]he Second Circuit has made it clear that 'the propriety of agency action must be evaluated on the basis of stated reasons'") (quoting *Treadwell v. Schweiker*, 698 F.2d 137, 142 (2d Cir. 1983)); *Stellmaszyk v. Berryhill*, 2018 WL 4997515, *28 (S.D.N.Y. 2018) (although the ALJ's RFC may be reasonable, "[i]t is not the function of this [c]ourt to ... supply its own rationale where the ALJ's decision is lacking or unclear") (quotation omitted); *McKinstry v. Astrue*, 2012 WL 619112, *4 (D. Vt. 2012) ("[a] court must not engage in a *post hoc* effort to supplement the reasoning of the ALJ"), *aff'd*, 511 F. App'x 110 (2d Cir. 2013) (summary order).

summary of over twenty treatment records from 2017 to 2019, failed to mention at least four[5] of those 2019 appointments. (*Compare* Tr. 26 *with* Tr. 1212, 1202, 1193, 1181).

More importantly, while some of the ignored records indicate that plaintiff was doing well – that he felt stable (Tr. 1204), in control (*id.*), and more regulated (Tr. 1195) – others indicate that plaintiff reported increased suicidal ideations (Tr. 1214), feeling "things . . . crawling underneath his skin" (*id.*), complained of paranoia and anxiety (Tr. 1183), and appeared fidgety (Tr. 1181), somewhat avoidant (*id.*), somewhat irritable (*id.*), and, exhibited a tangential thought process (Tr. 1212). Further, although the last treatment note in the record from 2019 suggested some positive improvement, it was based only on a brief interaction because plaintiff had missed his appointment due to public transportation issues. (Tr. 1168). This record suggests that the ALJ overlooked certain evidence from 2019.[6]

Second, the ALJ repeatedly stated that the record contains routinely unremarkable mental status examinations. (*See*, *e.g.*, Tr. 21, 27, 28, 29). The ALJ used this characterization as a basis for finding that the psychological assessments conducted by Pricila Cortes, L.M.H.C., and Lauren Stanley, L.M.H.C., were unpersuasive or deserving of little weight and as a reason to conclude that plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were exaggerated. (Tr. 27, 29). Yet, several of the ALJ's articulated summaries of plaintiff's treatment omit important mental status examination findings. For example, the ALJ

---

[5] Summarizing plaintiff's June 3, 2019 appointment, the ALJ stated that plaintiff had recently "punched holes in a wall and got into a physical altercation at a bar." (Tr. 26). In actuality, plaintiff reported that behavior during his July 11, 2019 appointment. (Tr. 1187-89 (reporting that plaintiff had "cracked a bottle over a person[']s head and beat the person up")). In mislabeling the dates of the treatment records, the ALJ glossed over plaintiff's report on June 3, 2019, that he had a hallucination while traveling to his appointment that included speaking to an individual on the bus who was not there. (Tr. 1210).

[6] Relatedly, the ALJ referred to the psychological assessments for determination of employability conducted by Pricila Cortes, L.M.H.C., and Lauren Stanley, L.M.H.C., in 2016, 2017, and 2018 (Tr. 29), but did not identify the most recent assessment conducted by Sherilyn Leege, MSW, in June 2019 (Tr. 1465-68).

rarely acknowledged instances in which providers noted paranoia and auditory and visual hallucinations in the mental status examination portions of their treatment notes. (*See* Tr. 20, 22, 23, 24, 25, 27 (acknowledging that *plaintiff reported* paranoia and hallucinations but failing to acknowledge that these symptoms were listed in the mental status examination portion of numerous exams); *see also* Tr. 864 (noting positive "AH/VH"); Tr. 1312 (noting paranoid thought content; Tr. 868 (same); Tr. 883 (same); Tr. 875 ("A/V hallucinations, paranoia")). Although the ALJ may have thought that these notations were based on plaintiff's own reports and unworthy of credence (*see* Tr. 27 (discrediting plaintiff's testimony about hallucinations because "he was never observed as distracted by a hallucination or responding to internal stimuli, and the evidence of his symptoms are entirely self-reported")), the record reveals that at least some appear based on clinical observations (*see* Tr. 889 (prescribing physician observed plaintiff talking to himself)). On remand, the ALJ should explain why he credited and acknowledged portions of the mental health status examinations but not others.[7]

Finally, although the ALJ acknowledged in his summary of the treatment records that plaintiff had at times exhibited a "down" mood, anxiety, impaired short-term memory and concentration, nervousness, agitation, and a racing and incoherent thought process (Tr. 24-26), the ALJ nonetheless characterized plaintiff's mental status exams as "routinely unremarkable" (Tr. 28). "Because the ALJ was not entitled to conclude that the examinations were largely normal, while disregarding or glossing over these problematic findings without explanation, his reliance on 'normal' results to substantiate his RFC determination was error." *Navedo v. Kijakazi*, 2022 WL 2912986, *13 (S.D.N.Y. 2022) (internal quotations omitted). *See also*

---

[7] The ALJ also failed to note mental status examination findings made during plaintiff's November 3, 2017, April 20, 2018, and May 15, 2019 appointments. (Tr. 24-26). Those appointment records contain various notations regarding nervousness, shaking, poor concentration, anxiety, rapid and pressured speech, and a paranoid thought process. (Tr. 871, 890, 1161-62, 1218).

*McIntosh v. Kijakazi*, 2022 WL 2384151, *5 (S.D.N.Y. 2022) ("[a]t no point in Dr. Etemadi's opinions does he state that [p]laintiff's examination was 'unremarkable'[;] . . . [b]y interpreting Dr. Etemadi's opinions to mean that [p]laintiff's examination was 'unremarkable,' the ALJ impermissibly substituted his interpretation of Dr. Etemadi's notes as a basis for rejecting it"); *Justin H. v. Comm'r of Soc. Sec.*, 2021 WL 4241505, *6 (W.D.N.Y. 2021) ("[t]he ALJ should have identified the specific findings he found unremarkable and explained why they did not support LMSW Wagner's opinion[;] [f]ailure to do so makes it difficult for this [c]ourt to conduct a meaningful review") (citations omitted); *LaTorres v. Comm'r of Soc. Sec.*, 485 F. Supp. 3d 482, 492-93 (S.D.N.Y. 2020) ("[t]he ALJ dismisses Dr. Pena's opinions, as well as the opinion from consultative examiner Dr. Nikkah, by citing the 'generally normal mental status examinations' contained in the record[;] . . . in this case the ALJ's decision gives no explanation of the ways in which the normal status findings contradict Dr. Pena's very specific opinions that covered disparate areas"); *Garcia v. Saul*, 2020 WL 5369324, *11–12 (D. Conn. 2020) ("the court's review of the record reveals other instances in which the ALJ, without citation to medical authority, relied on positive aspects of Garcia's mental status in order to minimize her reports of hallucinations[;] . . . [t]hese are precisely the types of cherrypicked treatment notes that the Second Circuit has held do not provide good reasons for minimalizing [a treating physician's] opinion") (internal quotations omitted). Further explanation by the ALJ for his assessment of plaintiff's mental status examinations appears necessary to permit meaningful judicial review.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 11)** is **DENIED**, and plaintiff's motion for judgment on the pleadings

**(Docket # 9)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                            *s/Marian W. Payson*
                                            MARIAN W. PAYSON
                                         United States Magistrate Judge

Dated:  Rochester, New York
          February 28, 2023